# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN PUTNAM; NANCY PUTNAM, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CV 07-B-0537-S ) |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on plaintiffs' Motion for Summary Judgment, (doc. 20),[1] and defendant's Motion for Summary Judgment, (doc. 30). Plaintiffs, Jonathan and Nancy Putnam, have sued defendant, American General Life Insurance Company, alleging breach of contract and bad faith failure to pay benefits based on defendant's denial of their claim for benefits under a life insurance policy. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 30), is due to be granted, and plaintiffs' Motion for Summary Judgment, (doc. 20), is due to be denied.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. **SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every ***reasonable*** inference." *Evans v. Stephens*, 407 F.3d 1272, 1284

(11th Cir. 2005)(quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(emphasis added).

## II. STATEMENT OF FACTS

On September 29, 2004, Benjamin Alexander, plaintiffs' son, applied for life insurance with defendant American General. (Doc. 20, Ex. 2 at AGL 0013-19.) Section 7 of Part B of the application contained questions regarding Alexander's health history. (*Id*. at AGL 0017.) Question A asked, "Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for: . . . 8) seizures, a disorder of the brain or spinal cord[,] or other nervous system abnormality, including a mental or nervous disorder?" (*Id*.) Alexander answered, "No." (*Id*.) Medical records obtained after Alexander's death showed that he had been treated for and/or diagnosed with generalized anxiety disorder, panic disorder, post-traumatic stress disorder, and anorexia nervosa. (Doc. 31, Ex. K at AGL 0334, 0392.) Also, these medical records show that Alexander reported "a long psychiatric history" to one of his treating physicians. (*Id*. at AGL 0392.) Moreover, he was in active therapy at the time he completed the application.[2] (*Id*. at AGL 809-10, AGL 855.)

Question B asked, "Is the proposed insured currently taking any medication, treatment or therapy[,] or under medical observation?" (*Id*.) Alexander answered, "Amitryptylene 25

---

[2]Between January 2003 and November 2004, Alexander "had 63 fifty minute psychotherapy sessions." (Doc. 31, Ex. K at AGL 855.)

mg for a sleep aid as needed . . . (since 1998);" and "[Clonazepam] .5 mg for airplane flights as needed . . . (since childhood)." (*Id*.)  Alexander did not indicate that he was taking these medicines to treat a mental disorder or that he was currently in psychotherapy.  (*Id*.)

Nancy Yasso, Director of Underwriting Services for defendant, testified that amitriptyline "can be used for a sleep aid," and "[i]t can be used for antianxiety."  (Doc. 25, Ex 3 at 10, 30.)  She testified that clonazepam was "for antianxiety."  (*Id*. at 30.)  When asked whether she considered Alexander's denial of diagnosis and/or treatment for a mental disorder and his use of medications used to treat anxiety to be inconsistent, Yasso testified, "No, it's not inconsistent, because he gave [defendant] the explanation of why he was using [the listed prescription medications] and that they weren't medications that were in constant use, that they were on an as-need basis."  (*Id*. at 30-31.)  Based on the application, she testified, defendant would not discern a need to investigate Alexander's statements.  (*Id*. at 31.)

> The application contained the following statement above Alexander's signature:
>
> I have read the above statements . . . .  They are true and complete to the best of my knowledge and belief.  I understand that this application . . . shall be the basis for any policy issued.  I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if:  (1) it is within the contestable period; and (2) such representation materially affects the acceptance of the risk. . . .

(Doc. 20, Ex. 2 at AGL 0019.)

On October 28, 2004, defendant issued a life insurance policy, number YMA0068873, to Alexander, which named plaintiffs as his beneficiaries.  (Doc. 20, Ex. 2 at AGL 0003,

4

AGL 0013; doc. 31, Ex. C at AGL 0008.) The policy contained an incontestability provision, which stated, "Except for nonpayment of premiums, we will not contest this policy after it has been in force during the lifetime of the insured for two years from the date of issue." (Doc. 20, Ex. 2 at AGL 0005.)

On May 13, 2005, a little more than six months after defendant issued the policy, Alexander was found dead in his apartment. (Doc. 31, Ex. E.) In June, plaintiffs filed claims for benefits with defendant. (*Id.*, Ex. H.) Because Alexander died within the contestable period of the policy, defendant investigated plaintiffs' claims. (Doc. 25, Ex. 3 at 42.)

Plaintiffs' claims were sent to Philip Evans, Senior Claims Examiner, for investigation. (Doc. 25, Ex. 2 at 5, 18.) Evans collected Alexander's medical records and reviewed his application as part of his investigation. (*Id.* at 6, 24, 28; doc. 31, Exs. G, I, and J.) Evans noted "there were some discrepancies or inconsistencies on the application that did not correspond with what was in the medical records." (Doc. 25, Ex. 2 at 24.) He noted that Alexander's medical records showed he had been diagnosed with "anorexia, post-traumatic stress disorder, anxiety, and panic disorder, which were not indicated on his application. (*Id.* at 28.) Evans sent the file to the Underwriting Department to determine whether defendant "would have issued the policy had [it] known about the claims information ahead of time." (*Id.* at 24.)

Yasso reviewed the file in the Underwriting Department. She testified that an underwriter "rel[ies] on the history that is given to [her] by the proposed insured." (*Id.*, Ex.

5

3 at 69.) Also, she said that, when an application is received initially, an underwriter "review[s] the application [to see] if it makes sense, the information that [the proposed insured has] given [the insurer], and does it appear that the applicant has been truthful." (*Id*. at 28.) She testified Alexander "gave [defendant] a reasonable explanation" of his use of the listed medications and defendant "believed him." (*Id*. at 67.) Therefore, defendant did not seek to verify or otherwise investigate Alexander's medical history. (*Id*. at 67-69.) However, she testified that, if Alexander had fully answered the questions on the application, defendant would have requested further information about his health and, considering this information, that she would not have issued the policy "until his weight [had] stabilized, until he had the chronic pain resolved and he was off the narcotics." (*Id*. at 47, 52-53.)

On January 12, 2006, Evans wrote plaintiffs denying their claims. (Doc. 31, Ex. L.) This letter stated:

> The policy application was completed on September 29, 2004 while the policy was issued on October 28, 2004. On the application were the following questions:
>
> Part B, Question 7.A.8., asks, "Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for: seizures; a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?
>
> In response to Part B, Question 7.A.8., Mr. Alexander answered "no." Upon review of Mr. Alexander's medical records, we found that Mr. Alexander did not disclose material information regarding his medical history that would have changed his answer to this question.
>
> . . .

6

> Had American General's Underwriting Department been aware of the information as outlined above[3] at the time Mr. Alexander completed and signed the original policy application (consisting of Parts A & B), it would not have issued the policy. Due to material misrepresentations of pertinent information on the application and as part of the physical examination, we are rescinding Mr. Alexander's policy, making any coverage under such policy null and void from its inception date.
>
> A premium refund check, in the amount of $150.48[,] shall be sent to the executor/executrix of Mr. Alexander's estate upon American General's receipt and acceptance of Letters of Testamentary identifying the named executor/executrix for his estate.

(*Id.* [footnote added].)

Thereafter, plaintiffs filed this action against defendant, alleging defendant breached the terms of Alexander's policy by failing to pay benefits and that this failure to pay benefits was done in bad faith.

### III. <u>DISCUSSION</u>

**A. CHOICE OF LAW**

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

---

[3] Defendant also denied plaintiffs' claims because Alexander misrepresented information regarding "advice, counseling or treatment by medical professional for the use of alcohol or drugs, including prescription drugs," in response to Question D of section 7. However, because the court finds, for the reasons set forth below, that Alexander's misrepresentation of his mental health in response to Question B is sufficient cause to deny plaintiffs' claims, it pretermits discussion herein as to whether Alexander's response to Question D was a misrepresentation that materially affected defendant's acceptance of the risk.

(1941)). "As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in tort, contracts, property law, etc.  Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." *Id*. (citing *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983)).

### 1.  Contract Claim

Contract claims in Alabama are decided based on the law of the state where the contract was formed, unless the contract provides otherwise.

> In a contractual dispute, Alabama law would have [the court] first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).  Lacking such a contractual specification, we follow the principle of *lex loci contractus*, applying the law of the state where the contract was formed.  [*Id*.]  That state's law then governs unless it is contrary to [Alabama's] fundamental public policy. *Id*. at 506-07.

*Stovall v. Universal Const. Co., Inc.*, 893 So. 2d 1090, 1102 (Ala. 2004).

The insurance policy at issue in this case did not specify the application of a particular state law.  Thus, Alabama would apply the law of the state where the contract was formed. The parties agree that the contract was formed in Washington.  Therefore, the court will apply Washington law to determine plaintiffs' breach of contract claim.

### 2.  Tort Claim

Under Alabama law, "the substantive rights of an injured party in a tort case are determined according to the law of the state in which the [injury] occurred." *O'Neal v.*

8

*Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992)(citing *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).  An insurer's bad-faith failure to pay a claim under its policy is a tort claim.  *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981).

The parties agree that defendant injured plaintiffs, if at all, in Alabama.  Therefore, the court will apply Alabama law to determine plaintiffs' bad-faith claims.

## B.  BREACH OF CONTRACT

Defendant contends that it is entitled to summary judgment on plaintiffs' breach-of-contract claim because it lawfully rescinded Alexander's policy based on misrepresentations on the application.  Pursuant to Washington law:

> (1)  Except as provided in subsection (2) of this section, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, ***unless the misrepresentation or warranty is made with the intent to deceive***.
>
> (2)  In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties.  The falsity of any such statement shall not bar the right to recovery under the contract ***unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer***.

Wash. Rev. Code § 48.18.090 (emphasis added).  Based on this section, a life insurance company may deny liability based on a misrepresentation if it "prov[es] . . . ***either*** the misrepresentation was made with 'actual intent to deceive' or that the misrepresentation was

9

such that it 'materially affected either the acceptance of the risk or the hazard assumed by the insurer.'" *Wilburn v. Pioneer Mut. Life Ins. Co.*, 508 P.2d 632, 635 (Wash. App. 1973)(emphasis added). The application provides that defendant may deny a claim or void the policy based on a misrepresentation in the application during the contestable period. (Doc. 20, Ex. 2 at AGL 0019.)

In Washington –

> Whether a misrepresentation is made with intent to deceive is a question of fact. However, proof that a material false statement was made knowingly raises a presumption that it was made with intent to deceive. Music v. United Ins. Co., 59 Wash. 2d 765, 370 P.2d 603 (1962). In the absence of credible evidence that false representations were made *without* intent to deceive, the presumption prevails. Kay v. Occidental Life Ins. Co., 28 Wash. 2d 300, 183 P.2d 181 (1947).

*Id*. (emphasis in original)

Given the undisputed facts that Alexander reported a "long psychiatric history" to his mental health care provider and he was in psychotherapy at the time he completed the application, the court finds that Alexander knowingly misrepresented his mental health history in response to question B on the application. Applying Washington law, the court presumes such knowing misrepresentation was made with the intent to deceive. Plaintiffs have presented no evidence to rebut this presumption. Therefore, the court finds that Alexander acted with an intent to deceive.

Washington law also provides,

> Information is material if the information measures the risk, which is "the touchstone of an insurance contract." *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F.2d 1296, 1302 (9th Cir. 1987). The materiality of a misrepresentation is usually a question of fact. *Olson v. Bankers Life Ins. Co.*, 63 Wash. 2d 547, 552, 388 P.2d 136 (1964). However, "when an insurer asks no information in regard to a certain matter, it is a fair assumption that it regards the matter as immaterial." *Uslife Credit Life Ins. Co. v. McAfee*, 29 Wash. App. 574, 577, 630 P.2d 450 (1981). This implies that when an insurer specifically asks information in regard to a certain matter, the presumption is that the matter is material.

*Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1003 (W.D. Wash. 2004). "The deceased's concealment of the facts concerning his illnesses, medical consultations and hospitalizations [is] ***unquestionably*** a material consideration in evaluating [insurer's] risk." *Wilburn*, 508 P.2d at 635(emphasis added).

Yasso testified that defendant would not have issued the policy to Alexander if the true state of his mental health history had been known. Plaintiffs have presented no evidence to rebut Yasso's testimony. Therefore, the court finds Alexander's misrepresentation of his mental health history "materially affected [defendant's] acceptance of the risk," and, thus, bars plaintiffs' right to recover benefits under the policy. Wash. Rev. Code § 48.18.090(2); *see also* doc. 20, Ex. 2 at AGL 0019.

Plaintiffs argue that defendant had a duty to investigate the alleged inconsistencies between Alexander's statements of his medications and his denial of diagnosis or treatment of a mental disorder before issuing him a policy. However, in the state of Washington, the insurer does not have a duty to investigate.

> [The insurer is] under no obligation to assume that the deceased's declaration [is] false. It [has] no duty to disregard his avowal of complete disclosure and seek out undisclosed medical records.
>
> Where a fact is specifically inquired about, or a question so framed as to elicit a desired fact, a full disclosure must be made, and the insurer has a right to rely upon the answer.

(Footnote omitted.) 12 J. Appleman, Insurance Law & Practice s 7292 (1943).

> (T)he insurance company has a *right to rely* upon representations and . . . *there is no duty on [its] part to question the veracity of the applicant and no duty to pursue*.

Byrnes v. Mutual Life Ins. Co., 217 F.2d 497, 502 (9th Cir. 1954); cert. denied, 348 U.S. 971, 75 S. Ct. 532, 99 L. Ed. 756 (1955). Accord, Meier v. Manhattan Life Ins. Co., 59 Wash. 2d 257, 367 P.2d 151 (1961).

*Wilburn*, 508 P.2d at 635-36.

The court finds defendant did not have a duty to investigate Alexander's statements before issuing a life insurance policy based on those statements.

As to plaintiffs' breach of contract claim, their Motion for Summary Judgment will be denied, and defendant's Motion for Summary Judgment will be granted. Plaintiffs' breach of contract claim will be dismissed.

## C.  BAD FAITH FAILURE TO PAY

In Alabama,

> A party alleging that an insurance company committed "normal" bad faith has the burden of proving: (1) a breach of the insurance contract; (2) an intentional refusal to pay the insureds claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason. [*Employees' Benefit Assoc. v.*] *Grissett*, 732 So. 2d [968,] 976 [(Ala. 1998)]. "Normal" bad

> faith claims are often referred to as "directed verdict on the contract claim[s]," *Blackburn v. Fid. and Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995), because a plaintiff must show that he is entitled to a directed verdict on the breach of contract claim in order to have his bad faith claim submitted to a jury. *Grissett*, 732 So. 2d at 976; *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). Thus, we review whether there was a "legally sufficient evidentiary basis" for a reasonable jury to find for [the insurer] on the breach of contract claim. Ala. R. Civ. P. 50(a); *see also Dutton*, 419 So. 2d at 1362 ("Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the ['normal' bad faith] claim must fail and should not be submitted to the jury.").

*Mutual Service Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004)(original emphasis deleted). "A verdict under the claim of bad faith must necessarily find liability in contract for benefits currently due because the tort of bad faith refusal to pay a valid insurance claim is so defined that, unless the plaintiff is entitled to recover on the contract, a bad faith claim cannot be maintained." *National Security Fire and Casualty Co., Inc. v. Vintson* 414 So. 2d 49, 52 (Ala. 1982).

For the reasons set forth above, the court finds that plaintiffs are not entitled to benefits under the Alexander policy. Therefore, defendant's decision to deny such benefits was reasonable and not made in bad faith.

As to their bad-faith claim, plaintiffs' Motion for Summary Judgment will be denied, and defendant's Motion for Summary Judgment will be granted. Plaintiffs' bad-faith claim will be dismissed.

**CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment, (doc. 30), and denying plaintiffs' Motion for Summary Judgment, (doc. 20), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 16th day of March, 2009.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE